Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8451 | **DATE** | 1/22/2004 |
| **CASE TITLE** | Brenda O'Neal vs. City of Chicago et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motion for Summary Judgment is GRANTED. Trial date stricken. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 31 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | IS | |
| | Copy to judge/magistrate judge. | CLERK | docketing deputy initials | |
| WAP | courtroom deputy's initials | 04 JAN 26 AM 11:29 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 2 2 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

BRENDA O'NEAL,

    Plaintiff,

v.

CITY OF CHICAGO and POLICE
CHIEF JERRY ROBINSON,

    Defendant.

Case No. 02 C 8451

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Brenda O'Neal ("O'Neal") filed a five-count complaint against Defendants City of Chicago and Police Chief Jerry Robinson alleging gender and racial discrimination based on her involuntary transfer from an administrative sergeant to a beat sergeant position for the City of Chicago. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000 et seq., 42. U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"). Before the Court is Defendants' Motion for Summary Judgment filed pursuant to FED. R. CIV. P. 56.

### BACKGROUND

O'Neal, an African-American woman, has been a police officer for the City of Chicago for more than eleven years. In June 1991, she was hired by City of Chicago as a probationary police officer. After serving a one-year probationary period, O'Neal attained the career service position of police officer. In May 2001, O'Neal was

promoted to sergeant. In February 2002, O'Neal was assigned to an administrative "desk job" in the Narcotics and Gang Investigations section (the "Narcotics Section") of the Organized Crime Division. In late May 2002, approximately four months into her new position, O'Neal was involuntarily transferred back to a beat sergeant position (*i.e.*, uniformed supervisory duty "on the streets").

The parties differ in their views of both the nature and motivating reasons of the transfer. O'Neal characterizes the transfer as effectively a demotion. Defendants characterize it as a lateral transfer. O'Neal claims that the transfer was motivated by gender and race-based discriminatory animus. Defendants claim that O'Neal was transferred because of security concerns after they were informed that O'Neal had purportedly dated a former police officer who was subsequently convicted of selling narcotics.

Defendants base their motion for summary judgment primarily on two arguments. First, Defendants contend that O'Neal cannot state a *prima facie* case under Title VII because there is no evidence of either an adverse employment action or that any similarly situated individuals outside of O'Neal's protected class received more favorable treatment. Second, Defendants claim that even if O'Neal could establish a *prima facie* case, she cannot establish that Defendants' proffered legitimate, non-discriminatory reasons for transferring O'Neal were pretextual. (Defendants also argue that

O'Neal cannot sustain her Section 1981 and Section 1983 claims and that Defendant Robinson is entitled to qualified immunity.)

## LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914

F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the employment discrimination context, summary judgment against a plaintiff is warranted where "the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989).

### B. Title VII

Title VII makes it unlawful for an employer to terminate or otherwise to discriminate against an employee based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may prove unlawful employment discrimination through either direct evidence or via the indirect burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiff proceeds under the indirect method and therefore must first establish a *prima facie* case of discrimination by demonstrating that she (1) was a member of a protected class, (2) performed her job according to Defendants' legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees outside of her protected class. *See, e.g., Markel v. Bd. of Regents of the Univ.*

*of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). If Plaintiff can show that "there is some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion," *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997), a presumption of discrimination arises, and Defendants must produce evidence of a legitimate, nondiscriminatory reason for O'Neal's termination. *Gordon*, 246 F.3d at 886.

## DISCUSSION

The parties agree that all claims in O'Neal's complaint fall, for summary judgment purposes, under Title VII law. *See* Def. Mem. at 2; Pl. Resp. at 3; *Forrester v. White*, 846 F. 2d 29, 32 (7th Cir. 1988). Defendants initially argue that O'Neal cannot make a *prima facie* case under Title VII because the undisputed facts show that there was no adverse employment action. In support of this, Defendants allege that the Chicago Police Department does not distinguish between administrative and beat sergeants. That is, the applicable rank for both positions is "sergeant," and a sergeant performing administrative duties has no authority over a beat sergeant. *See id.* Defendants also state that there are no differences in base salary, benefits or other privileges between administrative and beat sergeants. Thus, O'Neal's transfer was a "lateral reassignment [and] not a demotion." *See id.*

In contrast, O'Neal claims that the transfer was effectively a demotion, resulting in "a lower-paid and less prestigious" position. *See* Pl. Resp. at 2. O'Neal points to the various ways in which the duties of a beat sergeant are allegedly less favorable than those of an administrative sergeant, including: less opportunity for overtime pay, lower job prestige, fewer responsibilities, less flexible hours, less predictability in assignments, greater monitoring by superiors, and greater physical demands. *See id.* at 5-6. O'Neal also alleges that the transfer effectively validated rumors that she dated a corrupt police officer, thereby causing her to suffer a "tarnished reputation that will affect her future ability to receive a promotion." *See id.* Thus, the parties appear to agree on the following: (1) there is no separate rank for an "administrative sergeant" and (2) there is no difference in base pay and benefits, although there may be greater opportunities for overtime work for administrative sergeants. *See* Pl. Resp. Def. Local Rule 56.1(b) Statement of Facts, ¶¶ 36,37.

Under Title VII law, an "adverse employment action" must be, at a minimum, "materially adverse" and "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). "[A]n employee must show that material harm has resulted from . . . the challenged actions." *Traylor v. Brown*, 295 F.3d

- 6 -

783, 788 (7th Cir. 2002)(internal quotation marks omitted). The Seventh Circuit has provided examples of potential materially adverse job actions, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady*, 993 F.2d at 136.

More recently, the Seventh Circuit categorized the types of cases that can potentially include "materially adverse employment action[s]." *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002). Under *Herrnreiter's* classification, the present case best fits under the category of "[c]ases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted." *See id.* (citations omitted). The Seventh Circuit went on to caution, however, that these types of cases "are to be distinguished from 'a purely lateral transfer, that is, a transfer that does not rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do either.'" *See id., quoting Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). The issue, then, is whether the evidence

construed in a light most favorable to O'Neal can place O'Neal's claim into the category of cases recognized by the Seventh Circuit to constitute cognizable adverse employment actions.

Although neither party cites to *Herrnreiter*, its facts and holding heavily instruct this Court in the present case. In *Herrnreiter*, an accountant initially employed in the auditing division of the Chicago Housing Authority ("CHA") was transferred to the investigation division. *See id.* at 743. The accountant greatly preferred his newfound work in the investigation division, finding it more interesting and challenging than his prior work. *See id.* His new job also provided him with a car and the freedom to sign in and out of the office. *See id.* However, after six months, the CHA transferred him back to the auditing division. *See id.* Following the transfer, he claimed that his transfer (and subsequent firing) were motivated due to his race and national origin. *See id.* The Seventh Circuit affirmed the district court's grant of summary judgment for defendant, noting that an adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 744, *quoting Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In contrast, the Seventh Circuit held that the case before it represented "purely subjective preference for one position over

another." *Id.* at 745. Specifically, an "auditor's job is not *objectively inferior* to an investigator's job that has identical financial terms; nor is an accountant who is transferred from investigations to audits deprived of the opportunity to use the skills for which he is trained. . . ." *Id.* (emphasis added). Moreover, the "use of a company car and being excused from having to sign in or out of an office might be preferred by some employees, but not having to run around all day might be considered by others ample compensation for giving up those particular perks." *Id.* The Seventh Circuit concluded that the "two jobs were equivalent other than in idiosyncratic terms that do not justify trundling out the heavy artillery of federal antidiscrimination law." *Id.* Finally, the Seventh Circuit noted the policy reasons supporting its dismissal of plaintiff's claim: "otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit . . . [and] serious complaints would be lost among the trivial." *Id.* (citations omitted).

*Herrnreiter* controls here and disposes of most – if not all – of O'Neal's claim of adverse employment action. Like the plaintiff in *Herrnreiter*, the transfer at issue here did not result in any tangible financial change, given that the two jobs have essentially the same pay and benefits. An administrative sergeant *may* have greater opportunities for overtime work, but this appears to be a

function of the greater hour demands of the administrative sergeant. It is also a speculative financial outcome, which depends on the hours worked, and O'Neal makes no showing that the administrative job necessarily entails overtime pay. In addition, all of the additional benefits that O'Neal claims are inherent in an administrative sergeant position (*i.e.*, flexible hours and assignments, freedom from supervision, use of a car, parking space, cell phone, and pager, and freedom from uniform and heavy equipment) fall under the types of "perks" and "idiosyncratic terms" that are a "purely subjective preference" for some employees. *See Herrnheiter*, 315 F.3d at 745. The duties and responsibilities of a beat sergeant do not differ significantly in skill, responsibility, or compensation from those of an administrative sergeant. Moreover, O'Neal cannot show that a return to beat duty after four months in administrative duty will result in a deprivation of her skills: she is a trained police officer with extensive experience in the field. Accordingly, the transfer cannot qualify as an adverse employment action on this basis. *See id.; Williams v. Bristol-Myers Squibb*, 85 F.3d 270, 273-74 (7th Cir. 1996).

O'Neal, however, also alleges that the title and responsibilities of a beat sergeant carry "lower prestige" than those of an administrative sergeant. This claim, arguably, does not fall squarely under the *Herrnheiter* analysis. O'Neal seeks to

distinguish the ample case law cited by Defendants on the grounds that such case law did not "involve[] a lower status of the new position verified by coworkers and the employer' supervisor." Pl. Resp. at 6. Setting aside the issue of whether O'Neal's evidence can support the claim of "lower prestige," the more immediate issue is whether such purported "lower prestige" can - by itself - amount to an adverse employment action. O'Neal fails to cite any case law holding that a transfer to a purportedly lower prestige job - without any material adverse change in either compensation or work conditions - constitutes an adverse employment action. *See* Pl. Resp. at 4-5. Indeed, the case law cited by O'Neal uniformly holds that some objective material adverse change in working conditions or terms must occur. *See, e.g., Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994)(noting the "dramatic downward shift in skill level"); *Collins v. State of Ill.*, 830 F.2d 692, 703-04 (7th Cir. 1987)(noting that plaintiff was transferred to a new department with uncertain responsibilities and authority).

Although it does not appear that the Seventh Circuit has squarely addressed this issue, the District of Columbia Circuit recently held that a plaintiff "could not establish an adverse action on the basis that the reassignment deprived him of prestige" or otherwise rely on "purely subjective harms." *See Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). The Seventh Circuit has subsequently cited *Forkkio* with approval. *See Johnson v.*

*Cambridge Industries* Inc., 325 F.3d 892, 899 (7th Cir. 2003) (approving, without relying on, *Forkkio's* holding that adverse employment actions "cannot be established by showing job reassignments that carry loss of prestige"); *Grayson v. City of Chicago,* 317 F.3d 745, 750 (7th Cir. 2003) (citing *Forkkio's* holding that "an employee cannot establish an adverse action on the basis that a reassignment deprives him of prestige"). Thus, a bare claim of loss of prestige or status, without objective material adverse changes in employment, is insufficient to establish an adverse employment action under Title VII.

Finally, O'Neal's claim of a "tarnished reputation" can be quickly addressed. Assuming *arguendo* that O'Neal's evidence can support this claim of "tarnished reputation," O'Neal cites no authority - and this Court finds no controlling authority - for the proposition that a "tarnished reputation" is sufficient for establishing an adverse employment action. That is, to sustain a Title VII action, O'Neal's must tether her "tarnished reputation" claim to a materially adverse change in the nature or terms of work. As noted above, there is no evidence here to support such a finding. (This is not to say that reputational harm cannot constitute potential *damages* for an adverse employment action. See, e.g., *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 954 (7th Cir. 1998).)

In sum, even when construed in a light most favorable to O'Neal, the evidence here cannot establish that O'Neal suffered a legally-cognizable adverse employment action. The Court does not doubt that O'Neal experienced the transfer as adverse and found the return to the duties of a beat sergeant unpleasant. However, subjective distaste for a different job position is not enough to support a claim under Title VII, or, correspondingly, Sections 1981 or 1983. Because the Court finds that there is no adverse employment action, it need not address Defendants' other grounds for summary judgment.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: January 22, 2004